IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SEDALE Y.[1], ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:20-CV-709 |
| ) | |
| KILOLO KIJAKAZI[2], Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Sedale Y. ("Sedale") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f. Sedale alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine his physical residual functional capacity ("RFC") and perform a function-by function analysis; and (2) assess his subjective allegations. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 20) and **DENYING** Sedale's Motion for Summary Judgment (Dkt. 17).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

the Commissioner's conclusion that Sedale failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Sedale filed for SSI and DIB benefits in May 2017, claiming that his disability began on January 1, 2017. R. 15.[4] The state agency denied Sedale's claims at the initial and

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Sedale's date last insured was June 30, 2019; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 36; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

2

reconsideration levels of administrative review. R. 85–135. ALJ Joseph Scruton held hearings on July 30, 2019 and March 12, 2020, to consider Sedale's claims for DIB and SSI, which included testimony from vocational expert Sara Herman. R. 34–84. Sedale was represented by counsel at the hearing. On April 8, 2020, the ALJ entered his decision considering Sedale's claims under the familiar five-step process[5] and denying his claim for benefits. R. 15–26.

The ALJ found that Sedale suffered from the severe impairments of supraventricular tachycardia ("SVT"), lumbar spine degenerative disc disease, cervical spine stenosis, hypertension, obstructive sleep apnea, and obesity. R. 18. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18–19. The ALJ concluded that Sedale retained the residual functional capacity ("RFC") to perform sedentary work, except that he can never crawl, climb or crouch; can occasionally stoop and knee; can frequently handle and finger; can have no exposure to hazardous work activity and no exposure to concentrated levels of pulmonary irritants. R. 19. The ALJ also determined that Sedale may fall off task 5-10% of the workday, apart from scheduled breaks, and incur one unscheduled absence per month on average due to the impact of his impairments. Id.

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ determined that Sedale has no past relevant work, but that he can perform jobs that exist in significant numbers in the national economy, such as address clerk and stuffer. R. 26. Thus, the ALJ concluded that Sedale was not disabled. Id. Sedale appealed and the Appeals Council denied his request for review on September 24, 2020. R. 1–6.

## ANALYSIS

### I.     Medical History and ALJ Decision

Sedale was 23 years old on his alleged disability onset date. Sedale is obese, has a history of SVT and had ablations in 2008 and 2012. R. 412.  In November 2016, Sedale visited cardiologist Andrew Maiolo, M.D., and described occasional palpitations, mild headache, and brief tunnel vision. Sedale denied syncope, dizziness, chest pain, angina, resting dyspnea, or problems with bleeding or swelling. His episodes of SVT generally last five minutes to an hour, but are typically brief.  Dr. Maiolo diagnosed SVT and heart palpitations, and prescribed Metroprolol. R. 413.  Sedale visited Dr. Maiolo in December 2016 and reported improvement of his racing heart on Metoprolol, but that the medication makes him sleepy. R. 409. He denied syncope, excessive shortness of breath, and problems with swelling or bleeding. Dr. Maiolo prescribed diltiazem. R. 410.  Sedale did not follow up with Dr. Maiolo.

In March 2017, Sedale presented to the emergency department complaining of constant back pain that worsened over the past few months. R. 432. Sedale reported numbness and tingling in his extremities. Upon exam, Sedale had full range of motion, with tenderness and spasm in his lumbar back. R. 435. His lower and upper extremities had full range of motion, no swelling or tenderness. Id. Tests showed disc space narrowing in the thoracic spine, annular disc bulges at multiple levels, and mild degenerative disc disease in the lumbar spine. R. 456.  Sedale was prescribed pain medication and recommended to follow up with an orthopedist. R. 437.

Sedale had an initial consultation with George Baylor, M.D., at Blue Ridge Pain Management Associates in May 2017. R. 472–74. Sedale described pain that comes and goes, and improves with rest. Sedale reported that a previous epidural steroid injection provided a temporary benefit. He had a normal physical exam, with full range of motion of his lumbar spine and all extremities.  Dr. Baylor assessed lumbar degenerative disc disease, prescribed pain medication and recommended a lumbar epidural steroid injection. R. 474.  Dr. Baylor performed the epidural steroid injection on May 16, 2017. R. 475.  A month later, Sedale reported worsening back pain. R. 480.  His objective findings were unchanged.

On July 10, 2017, Sedale visited Michelle Kew, M.D., at the UVA ortho spine clinic, and reported low back pain, bilateral lower extremity pain, numbness and tingling. R. 486.  Sedale reported working as a bouncer, but that he's been unable to work due to falls. He reported using a cane occasionally, and that his pain is worse with sitting, laying down, and walking.  Dr. Kew diagnosed congenital stenosis, and recommended physical therapy, epidural steroid injections, and weight loss. R. 488.

Sedale followed up with the pain management clinic in July 2017 (R. 513), September 2017 (R. 562), October 2017 (R. 570), November 2017 (R. 573), and December 2017 (R. 579). He continued to complain of worsening pain in his back and legs, but had normal range of motion in his lumbosacral spine and no motor, reflex or sensory deficits in his lower extremities. His physicians prescribed epidural steroid injections and a TENS unit (after Sedale's pain medication prescription was discontinued based on a positive drug screen).  R. 579.

In September 2017, Sedale presented to the emergency room complaining of dizziness while driving his car on a paper route, resulting in vomiting, chest pressure and racing heart.

R. 524. Sedale's physical examination was normal (R. 526), and his diagnostic tests were unremarkable. R. 529.

On September 18, 2017, social security physician Jameson Buston, M.D., reviewed Sedale's records and determined that he could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; could stand, walk and sit 6 hours in an 8-hour workday, had unlimited push and pull; and could frequently climb ramps/stairs, stoop, crouch and crawl. R. 91–92.  In explanation, Dr. Buston noted that Sedale's BMI is in the 40s, he has degenerative disc disease of the lumbar spine and had SVT episode in 2016; however, he has normal range of motion in his spine, normal strength, normal gait and can perform activities of daily living. R. 92. Dr. Buston found that Sedale should never climb ladders due to his obesity.

On March 14, 2018, state agency physician Jack Hutcheson, M.D., reviewed Sedale's records and agreed with Dr. Buston's physical RFC determination.  R. 127–29. Dr. Hutcheson also determined that Sedale should avoid exposure to vibration due to his degenerative disc disease. R. 129.

On August 9, 2018, Sedale visited the Bradley Free Clinic and was diagnosed with uncontrolled hypertension. R. 629. On August 9, 2018, Kathleen Goldstein, D.O., completed a physician's statement noting that Sedale was "free from any disability which would prevent him/her from caring for children." R. 628.

In January 2019, Sedale reported taking anti-inflammatories and muscle relaxants, and requested epidural injections for his spinal stenosis. Id. Dr. Goldstein referred Sedale to orthopedics for injections. R. 630.

In April 2019, Sedale visited the Bradley Free Clinic, complaining of racing heart and skipping beats.  He reported "this only occurs when he is relaxing and never occurs when he is

6

working out." R. 631. Sedale's physical examination was normal, and he was diagnosed with irregular heartbeat, spinal stenosis, and hypertension. Sedale was given a holter monitor for his heart, which showed no acute findings. R. 633, 755.

In July 2019, Sedale underwent a lumbar spinal surgical evaluation with Jesse Stem, M.D. R. 642. Sedale reported pain in his low back that radiates into his legs with numbness and tingling. He also reported associated leg weakness, balance difficulty and loss of coordination. Upon examination, Sedale had a stable gait, balanced standing posture, non-tender lumbar spine, intact motor function in his lower extremities, and no pain with flexion or extension. R. 644. Dr. Stem diagnosed lumbar radiculopathy, cervical myelopathy and thoracic spine pain. R. 645. He recommended a follow up MRI and additional epidural steroid injections, together with pain management. Dr. Stem noted that Sedale "may continue normal activities of daily living as tolerated." Id.

Dr. Stem referred Sedale to Carilion Clinic Pain Management, where Sedale was evaluated in November 2019. Sedale related the same complaints, and his physical examination was negative. Nicholas Clark, M.D., prescribed physical therapy. R. 670–76. That same day, Sedale was referred to the emergency department for headache, dizziness, and hypertension. R. 680.

Sedale attended twelve sessions of physical therapy between November and December 2019. R. 687–91. His discharge summary indicates that he made no progress with his low back pain, and he was advised to continue a home exercise program.

On September 11, 2019, the ALJ sent interrogatories to medical experts Peter Schosheim and Jack Lebeau, requesting their opinions regarding Sedale's physical restrictions. R. 649, 660. On October 7, 2019, Dr. Schosheim completed the interrogatories and determined that Sedale

7

suffered from impairments of SVT, chronic low back pain, and morbid obesity. R. 650. Dr. Schosheim determined that Sedale's impairments did not meet or medically equal a listed impairment, and found that he can frequently lift and carry up to 10 pounds; occasionally lift and carry up to 20 pounds; can sit for 2 hours at a time, and 6 hours total in an 8-hour workday; stand for 1 hour at a time and 4 hours total in an 8-hour workday; and walk for 1 hour at a time and 3 hours total in an 8-hour workday. R. 654. Dr. Schosheim found that Sedale can frequently operate foot controls, should never climb ladders or scaffolds, and can occasionally perform other postural activities such as climbing stairs, balancing, stooping, kneeling. R. 655–56. Dr. Schosheim also limited Sedale to occasional exposure to unprotected heights, moving mechanical parts and vibrations; and frequent exposure to operating a motor vehicle, humidity and wetness, dust, odors and fumes, and extreme heat and cold. R. 657.

On November 3, 2019, Dr. Lebeau completed the medical interrogatories and determined that Sedale could lift and carry 10 pounds continuously, lift carry 20 pounds frequently, sit for 2 hours at a time and up to 7 hours in an 8-hour workday, stand for 1 hour at a time and up to 4 hours in an 8-hour workday, and walk for 1 hour at a time and up to 3 hours in an 8-hour workday. R. 665. Dr. Lebeau found that Sedale can operate foot controls continuously, and imposed similar postural and environmental restrictions as Dr. Schosheim. R. 668–69.

Sedale established care with Carilion Clinic Family Medicine in January 2020, and he was diagnosed with hypertension, SVT, and spinal stenosis of the lumbar spine. R. 751, 754. The physician referred Sedale to a cardiologist for management of his SVT. Sedale visited cardiologist Hama Amin, M.D., on January 22, 2020. R. 771. He reported daily palpitations at rest and with exertion. Dr. Amin diagnosed heart palpitations, SVT, hypertension, obesity, near

syncope and obstructive sleep apnea. R. 774–75. Sedale's holter monitor showed two daytime episodes of heart block/pauses. R. 765–66.

The ALJ reviewed Sedale's testimony regarding his impairments and his medical history and treatment records. R. 20–22. The ALJ noted that "the objective findings do not corroborate the allegations to the disabling extent as asserted" by Sedale. R. 22. The ALJ noted that the proposed RFC of a range of sedentary work accommodates Sedale's history of heart related impairments, obesity and overall physical pain associated with his back impairments. Id. The ALJ also stated that, "in consideration of the claimant's impairments as a whole, as well as her [sic] subjective limitations of pain, the undersigned has afforded the claimant the above additional limitation regarding absences from work." Id.

The ALJ noted that Sedale's treatment has been essentially routine and conservative, primarily consisting of visits with treating physicians for his hypertension and obstructive sleep apnea, with no evidence of regular symptoms, complaints or care. The ALJ noted that after 2017, Sedale had minimal treatment for his SVT, often denied any associated symptoms, and exhibited normal findings during testing, including use of a 24-hour holter monitor. Id. The ALJ noted that Sedale underwent numerous forms of care and testing for his back, including physical therapy and injections; but that specialists recommended continued conservative care, rather than surgery, and Sedale reported some relief with injections and medication use. The ALJ also noted that Sedale was not entirely compliant following prescribed treatment, although the ALJ recognized that in some instances Sedale had justifiable cause, such as inability to afford treatment. R. 22.

The ALJ also noted that Sedale routinely had normal physical examinations, with normal gait, strength and tone, and normal range of motion in his extremities. R. 23. The ALJ noted that

9

pain and symptoms are not always accompanied by objective evidence and did not disregard Sedale's symptoms solely due to lack of objective evidence. Id.

The ALJ considered the opinions of state agency physicians Drs. Buston and Hutcheson, which limit Sedale to a range of light work. R. 23. The ALJ found these opinions somewhat persuasive, and agreed with their postural and environmental limitations. R. 24. The ALJ determined, however, that Sedale is limited to sedentary work, rather than light, and will have unscheduled absences. Id.

The ALJ also considered the medical interrogatory responses from Dr. Schosheim and Lebeau, and found their opinions that Sedale could perform light work to be inconsistent with the record. R. 24. The ALJ determined that Sedale is limited to sedentary work, based upon his physical impairments, and his testimony regarding his pain and symptoms. Id. The ALJ concluded that the "above residual functional capacity is supported by the claimant's overall history of treatment, which suggests response to conservative treatment and no evidence of symptom worsening with time. Based on the totality of the evidence, the undersigned finds that the claimant has some work-related limitations, but only to the extent described in the above residual functional capacity." R. 24–25.

## II. Function-by-Function Analysis

Sedale asserts that the ALJ "either ignored or attempted to minimize the significant objective findings" in his conclusion that Sedale can perform sedentary work. Id. at 18. Sedale also asserts that the ALJ failed to perform a function-by-function analysis and make specific findings regarding whether his impairments impact his ability to sit, stand, need to take breaks or lie down during the day, or be absent from work. Id. at 19. Sedale asserts that the ALJ did not explain how he determined that Sedale may be off task 5-10% of the workday and would have

one unscheduled absence per month on average. Id.  Sedale asserts that his heart condition causes daily spells during which his heart races, he has chest tightness, shortness of breath, feelings of panic and then fatigue. Pl Br. Summ. J. p. 16.  Sedale also asserts that he has constant, sharp back pain that radiates into his legs, and weakness in his right leg. Id.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Mascio v. Colvin, 780 F.3d. 632, 636 (4th Cir. 2015).  The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996).[6] The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ performed the required function-by-function analysis. The ALJ specifically discussed Sedale's SVT, obesity and back pain and included limitations to accommodate those issues. R. 20–25. The ALJ reviewed Sedale's medical history and subjective allegations in detail, and provided a detailed RFC limiting Sedale to sedentary work with additional restrictions on his postural activities, handling and fingering, environmental exposures, and accommodations to be off task work and be absent from work due to his impairments. R. 19. Those specific limitations were included in the hypothetical the ALJ posed to the vocational expert, and the vocational expert testified that someone with those restrictions could perform jobs in the national economy. R. 81–82.

The ALJ reviewed the treatment records and Sedale's complaints regarding his heart condition and back pain. The ALJ noted that Sedale's treatment for both conditions was conservative and routine, and his conditions did not significantly worsen over time. The ALJ noted that Sedale's physical examinations were unremarkable, with normal findings in his back and extremities. However, the ALJ recognized that objective evidence does not always accompany pain and symptoms, and thus, the ALJ restricted Sedale to a limited sedentary RFC. The ALJ imposed more restrictions than those suggested by the four reviewing physicians who provided opinions in the record. The ALJ noted that the RFC accommodates Sedale's history of heart related impairments, obesity and overall physical pain associated with his back impairments. R. 22  The ALJ also provided additional limitations for Sedale to be off-task and absent from work in consideration of Sedale's impairments as a whole and his subjective allegations of pain. Id.

Thus, the ALJ provided a narrative discussion explaining his conclusions and the evidence that contradicts the RFC determination, cited specific medical facts and non-medical evidence supporting his conclusion, discussed Sedale's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and described the maximum amount of each work-related activity that Sedale can perform. As noted above, an ALJ's narrative discussion of all the evidence in support of his findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8P.

### III.    Subjective Allegations

Sedale asserts that the ALJ failed to properly assess his subjective allegations. Pl. Br. Summ. J. p. 21.  Specifically, Sedale asserts that the ALJ improperly discounted his subjective complaints of pain and fatigue based on lack of objective medical evidence, citing to Arakas v. Commissioner, 983 F.3d 83 (4th Cir. 2020). Sedale is correct that objective evidence is not

required to find a claimant disabled. However, that does not require an ALJ to accept without question a claimant's complaints of disabling pain from impairments that do not always have objective markers.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Substantial evidence supports the ALJ's determinations regarding Sedale's allegations. The ALJ reviewed Sedale's testimony in detail, along with the evidence of record. The ALJ found that Sedale's statements concerning the limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 20. The ALJ recognized Sedale's limited daily activities but cited specific evidence as to why those activities may not be as limited as alleged based upon Sedale's objective examination findings and progress notes in the record. The ALJ outlined his reasons for this determination in detail and his reasoning is examined above. R. 22–24.

Sedale's effort to apply Arakas to this case is unavailing. Here, Sedale's physical complaints of pain primarily resulted from SVT and degenerative disc disease in his lumbar spine, both of which are apparent and confirmed by objective testing. These physical impairments are not comparable to conditions such as fibromyalgia, that was at issue in Arakas, and that are not identified through objective testing. In Arakas, the plaintiff experienced pain from a condition that did not create objective findings, and the Fourth Circuit found that the ALJ erred by relying on the absence of such findings to discount the plaintiff's subjective statements. Here, there there is a plethora of objective evidence relating to Sedale's SVT and low back impairments. However, the objective evidence also reflects that Sedale had normal physical examinations, full range of motion in his back and extremities, normal gait, full sensation, etc. Despite these findings, the ALJ recognized that Sedale suffered from pain and limited him to sedentary work, and included detailed postural and environmental restrictions. The ALJ provided a more restrictive RFC than any of those recommended by the four reviewing physician opinions in the record. The ALJ also acknowledged that Sedale may be off task and would miss one unscheduled day of work per month due to his subjective complaints of pain. R. 20–24. See

Walker v. Saul, No. 2:20-cv-00196, 2021 WL 342570, at *10 (S.D.W. Va. Jan. 6, 2021) ("[T]he ALJ did not discount [c]laimant's subjective complaints based on the lack of objective evidence, but instead properly considered numerous factors, including [c]laimant's daily activities). Cf. Arakas, 983 F.3d at 97 ("Thus, while the ALJ may have considered other evidence, his opinion indicates that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints.").

Thus, the ALJ's analysis of Sedale's subjective allegations is supported by substantial evidence. See Ladda v. Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.)

## CONCLUSION

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to James P. Jones, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections,

including the waiver of the right to appeal.

                                        Entered:  December 2, 2021

                                        *Robert S. Ballou*

                                        Robert S. Ballou
                                        United States Magistrate Judge